UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL ALDOUS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3-11-238 |
| | § | |
| R STRICKLAND, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This case arises out of the execution of an arrest warrant for Plaintiff Michael Aldous. Plaintiff filed this suit alleging excessive force and various other federal and state law claims against the three Galveston County Sheriff's Office employees present during the arrest: Deputies Ross Strickland and Jeff Jackson,[1] and Major Henry Trochessett. Defendants seek summary judgment, arguing that the evidence does not support the claims, and that, in any event, they are entitled to immunity. Having considered the briefing, arguments of counsel, the competent summary judgment evidence, and the applicable law, Defendants' Motion for Summary Judgment is **GRANTED**.

---

[1] The briefing and affidavits alternately refer to Deputy Jackson as "Jay" and "Jeff." The Court uses Jeff because it is the name on Deputy Jackson's sworn affidavit. Docket Entry No. 35-8.

I.   **FACTUAL BACKGROUND**[2]

On May 20, 2009, Deputy Jackson was asked to execute two arrest warrants on drug possession charges, one for Michael Aldous and one for his wife Meghann.[3] Jackson requested Deputy Strickland's assistance. While Strickland was in his vehicle awaiting instructions, Trochesset, who was on his way home, stopped to talk with Strickland, and Strickland requested that Trochesset also assist.

Jackson advised Strickland that he had observed Meghann enter a black BMW with another woman. The three deputies and the two women converged at the Aldous residence in Santa Fe, Texas. Due to a history of contention between the Aldous family and the Santa Fe Police Department, Strickland recorded the subsequent events with the video camera mounted to the dash of his vehicle. The camera captured the front of the vehicle and the vehicle's backseat for the entirety of the arrests that followed.[4]

Defendants arrested Meghann outside the Aldous residence largely without incident. Defendants described her as cooperative, so much so that they detained her in the back of Strickland's vehicle without handcuffs.

---

[2] In presenting the facts, the Court resolves all factual disputes in favor of Michael Aldous, as the nonmovant, except where directly contradicted by the video evidence. Docket Entry No. 35-4 (DVD on file in Clerk's Office); *see also infra* Part II (discussing summary judgment standard).
[3] Because this opinion refers to four members of the Aldous family, the Court abandons its normal practice of referring to parties by their last names and uses first names for clarity.
[4] The camera's limited viewpoint did not capture video of all of the contested event, but the audio of the entire occurrence can be heard.

Michael's mother Terry was the other woman present at the scene when Meghann was arrested. She called and requested that Michael come to the Aldous residence. Defendants did not inform Terry of the warrant for Michael's arrest. Shortly thereafter, a pickup arrived, traveling at high speed, and Michael emerged from the vehicle with his father Warren. Jackson established Michael's identity and then advised him that he was under arrest. From here the parties' stories differ slightly. Jackson states that he walked Michael toward the rear of Strickland's vehicle, but before he could handcuff Michael, Michael began to flee. Michael denies running from Jackson, and his complaint alleges that Jackson grabbed at him and Michael instinctively took a step back, whereupon Jackson slammed Michael to the ground.

Trochesset remained at the front of Strickland's vehicle near Warren and Terry to prevent them from interfering with the arrest. Whether Michael ran away or stepped back, the parties do not dispute that Jackson took Michael to the ground to complete Michael's arrest, with Strickland's assistance. Together Strickland and Jackson handcuffed Michael, double locking the cuffs to keep them from getting any tighter. Michael's parents began yelling at Defendants, "What are you doing?" and "Why are you arresting him?" as well as various other obscenities and demands to leave their property. While Michael was on the ground, Strickland allegedly put his knee into Michael's back to prevent him from running or stepping

away again. Michael further alleges that he remained on the ground with Strickland's knee in his back for several minutes. The video evidence does not show Michael on the ground, but, given the time that Michael is not visible on the video, the recording reveals that Michael was not on the ground for longer than two minutes.

During Michael's arrest, Terry opened the back door to Strickland's vehicle and instructed Meghann to get out, but Meghann remained seated, and Trochessett used the weight of his body to close the door. Warren and Terry continued to yell at Defendants to leave their property and called them criminals. Several spectators were present during this time, and one is visible on the video, emerging from the Aldous residence.

Strickland requested backup and additional police vehicles arrived. As Strickland escorted Michael to his vehicle, Michael requested that Strickland loosen his handcuffs, and Strickland complied. Trochesset instructed the backup units from the Santa Fe Police Department to leave the Aldous property, because he believed their presence would further inflame tensions.

Once both Michael and Meghann were in Strickland's vehicle, Strickland drove away. Michael and Meghann were subsequently transferred to another Sheriff's Office vehicle and transported to Galveston County Jail. At the jail, Jackson booked them and medical staff evaluated them. At no point during the

transport to jail or the medical screening did Michael complain of injuries that occurred during his arrest.

Michael filed this suit against Jackson and Strickland under 42 U.S.C. section 1983, alleging various violations of his Fourth and Fourteenth Amendment rights. Specifically he alleges excessive force, assault and battery, unreasonable search and seizure, false arrest and false imprisonment, and abuse of process. He alleges a supervisory liability claim against Trochesset. Against all three Defendants, he alleges federal law conspiracy to violate his civil rights, as well as state law conspiracy and intentional infliction of emotional distress.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue on any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 877 U.S. 317, 331 (1986). All reasonable doubts on questions of fact must be resolved in the nonmovant's favor. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted). The court assigns "greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at

the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citation omitted) (upholding summary judgment in part based on video evidence).[5]

## III. ANALYSIS

### A. Excessive Force Claim

Michael alleges that Strickland and Jackson used excessive force in arresting him and that this force amounted to assault and battery.[6] An excessive force claim implicates the Fourth Amendment right to be free from unreasonable search and seizure. *See* U.S. Const. amend. IV. To establish an excessive force claim, Michael must show "(1) an injury (2) [that] resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively

---

[5] When Michael originally filed this case, he was represented by an attorney. Now Michael, who is a licensed attorney, represents himself *pro se*. While *pro se* parties are usually afforded leniency, the same leniency need not extend to a licensed attorney who proceeds *pro se*. *See Hamlett v. Ashcroft*, No. 3:03-CV-2202-M, 2004 WL 813184, at *6 (N.D. Tex. Apr. 14, 2004).

The Court nonetheless resolves procedural issues surrounding the summary judgment evidence in Michael's favor because of his transition during the discovery process from being represented to *pro se* status. The Court thus rejects the Defense requests that admissions to which Michael did not respond be considered as summary judgment evidence and that discovery responses Michael produced late be excluded from consideration. Even resolving these procedural issues in Michael's favor, the summary judgment record supports dismissal of the claims.

[6] Michael asserts his assault and battery claim as part of his Fourth Amendment claim under section 1983. Docket Entry No. 1, at 6–7. Texas law provides that "[a] peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or search, or to prevent or assist in preventing escape after arrest." Tex. Penal Code Ann. § 9.51 (West 2012). This statute permits an officer's privileged use of force in the performance of his duties. *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988). Thus, under Texas law, whether an officer assaulted or battered an individual in the course of arresting that individual amounts to a question of whether the officer used more force than was necessary—excessive force—to make the arrest. Because the Court finds that the force used was not more than what was necessary to complete Michael's arrest, the assault and battery claim fails as a matter of law.

unreasonable." *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (citation and internal quotation marks omitted). Under this "objectively unreasonable" standard, "an officer's subjective motivation and intent are irrelevant." *Hill v. Carroll Cnty.*, 587 F.3d 230, 234 (5th Cir. 2009) (citation omitted); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.") (citation omitted). "The court must measure the force used under the facts as a reasonable officer would perceive them, not necessarily against the historical facts." *Hill*, 587 F.3d at 234 (citation omitted). The reasonableness standard takes account of "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396–97. Finally, the reasonableness test must consider whether the arrestee "is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted).

A recent Fifth Circuit case demonstrates when summary judgment is appropriate in excessive force cases. *Poole v. City of Shreveport* involved an excessive force claim against two officers who made an arrest following a traffic stop. No. 11-30158, 2012 WL 3517357, at *1–2. (5th Cir. Aug 16, 2012). The arrest was captured on video, and the video evidence revealed that Poole did not

comply with the officers' requests to turn around and present his arms for handcuffing. *Id.* at *5. When the officers could not induce Poole's compliance by verbal commands or attempts to grab Poole, one of the officers tasered him, and the officers were then able to complete the arrest. *Id.* Although Poole alleged that the use of force was the result of a personal desire for vengeance, the Fifth Circuit found this allegation made "no difference when viewed against the backdrop of [Poole's] broader interaction with the two officers." *Id.* "Because Poole, upon refusing to turn around and be handcuffed, posed an immediate threat to the safety of the officers and actively resisted the officers' instructions, the use of force was not clearly excessive." *Id.* (citations and internal punctuation omitted); *see also Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009) (holding that force was not unreasonable when video evidence showed that arrestee physically resisted, officer subdued him by pushing him into the hood of the police cruiser, and arrestee suffered bruises as a result).

In contrast, the Fifth Circuit reversed a grant of summary judgment in *Nottingham v. Finsterwald*, 455 F. App'x 460, 461 (5th Cir. 2011) (per curiam). Medical records indicated that during his arrest Nottingham suffered black eyes, a laceration to the neck, and soft tissue swelling to his left wrist and hand. *Id.* at 461. No evidence showed that Nottingham had resisted arrest, and a fact issue existed concerning whether he was struck before or after he was handcuffed, and by

whom. *Id.* Given these facts, the Fifth Circuit held that the district court erred in granting summary judgment in favor of the defendants. *Id.*; *see also Peterson v. City of Forth Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (reversing summary judgment on an excessive force claim when a genuine issue of material fact existed regarding whether plaintiff was struck before or after he had been handcuffed).

Assuming that Michael suffered an injury during his arrest,[7] the summary judgment evidence nonetheless establishes that, as in *Poole*, Defendants' use of force was not unreasonable. The video and other evidence show that this incident was the type of "tense, uncertain, and rapidly evolving" situation contemplated by the Supreme Court in *Graham*, 490 U.S. at 396–97. Evaluating the reasonableness of Defendants' actions must therefore consider their need to make split-second judgments in a hostile environment. *Id.*

The video evidence shows that Michael entered the Aldous property at a high speed, putting Defendants on alert. He walked briskly past Defendants as one of them attempted to identify him, asking first if he is Michael Lee Warren and then correcting himself to ask whether he is Michael Lee Aldous. Michael walked

---

[7] There appears to be a fact issue on that question. Michael asserts that, as a result of the force used by Strickland, he now has a herniated disc that requires surgery. Docket Entry No. 51-2 at 24. Defendants point out that Michael complained of no pain or injury during his transport to the Galveston County Jail, and his jail medical history reveals that he complained of no pain or injury upon his arrival. Docket Entry No. 36 at 14. Michael has not provided the Court with any medical records or bills that identify his injury or any costs he has incurred treating it. The conflicting evidence regarding Michael's injury must be resolved in his favor. *Evans*, 246 F.3d at 348.

off camera toward the rear of Strickland's vehicle, and a deputy demanded that he place his hands on the car. As Jackson attempted to arrest Michael and he ran or stepped away, Michael's parents screamed at the officers. Once Michael was on the ground, Jackson told Strickland to lock Michael's handcuffs, and Strickland's affidavit states that he double locked them "so they would not ratchet tighter." Docket Entry No. 35-7 at 3.

A crowd assembled at the Aldous property during the arrest. The three Defendants were outnumbered by Michael, Meghann, Terry, Warren, and at least five other individuals Michael identified in his discovery responses. *See* Docket Entry No. 51-2, at 30–31 (identifying Brandon Aldous, Mathew Watkins, Mathew Bland, Blaine Watkins, and Mathew Vincent as being present at the scene during Michael's arrest). Major Trochesset testified in his sworn affidavit that these individuals came out of the Aldous house, surrounding and yelling at him. Docket Entry No. 35-6, at 3. As a result, Jackson assisted Trochessett in dealing with the crowd, and Strickland remained on the ground with Michael and called for back up. *See id.*

During the commotion, Michael asked to get up. Terry opened the rear door of Strickland's vehicle in an apparent attempt to free Meghann. Michael can be heard asking Strickland how much money he makes per hour and suggesting it is ten dollars, to which Strickland replies that he makes five. A bystander yelled

"Get off his back!" Michael demanded to see the warrant for his arrest and asked again to get up. He again demanded to see the warrant. Michael was then escorted to the rear of the police car, where he asks Strickland to loosen his handcuffs, which Strickland does. Throughout the approximately two minutes that Michael is off screen, his parents can be heard yelling at Defendants.

Whether Michael instinctively stepped back or ran away from Jackson, a reasonable officer in Jackson's position could have believed that Michael was attempting to flee, and that tackling Michael to the ground was necessary to affect his arrest. Michael appeared to be resisting arrest, and therefore posed a threat to Defendants, which was compounded by the presence of the various bystanders yelling at and surrounding Defendants. A reasonable officer in Strickland's position could have believed that it was necessary to keep Michael on the ground to prevent any further escape, especially given that Michael's family and friends were shouting at the deputies, that the deputies were outnumbered, and that Michael's mother tried to let Meghann out of Strickland's vehicle. Contrary to Michael's assertion that he was "begging [Strickland] to stop [and] almost crying on the ground," Docket Entry No. 51-2, at 24, Michael's voice is calm throughout the incident, to the point of teasing Strickland about the amount of money he earns.

Michael's response to the summary judgment motion focuses primarily on allegations regarding the officer's subjective intent. *See* Docket Entry Nos. 52, 53.

He contends that Defendants' conduct during the arrest was retaliation for disputes his family has had with local law enforcement over the years and his political and legal activism against law enforcement. *See id.* These allegations are irrelevant to the objective test of whether Defendants used excessive force under the circumstances. *Hill*, 587 F.3d at 234. Given Michael's entry at high speed, his apparent attempt to flee, the crowd that gathered, and the commotion surrounding the event, including his parents' screaming and Terri's attempt to free Meghann, Defendants' use of force to apprehend and maintain custody of Michael was objectively reasonable. Because the evidence, construed most favorably for Michael except when directly contradicted by the recording, establishes that Defendants used reasonable force, summary judgment in favor of Defendants is appropriate on Michael's excessive force claim.

### B. Other Substantive Section 1983 Claims

Michael conceded at the oral hearing on this motion that Defendants had a valid warrant for his arrest. Defendants attached the warrant to their motion for summary judgment. Docket Entry No. 35-2. Because Defendants acted under the legal authority of an admittedly valid warrant, the claims alleging that the arrest itself was unlawful must fail. *See, e.g.*, *Smith v. Gonzalez*, 670 F.2d 522, 526 (5th Cir. 1982) ("Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest."). Accordingly, the unreasonable search and

seizure, false arrest and imprisonment, and abuse of process claims cannot withstand the summary judgment motion.

### C. Supervisory Liability Claim

The complaint also alleges a supervisory liability claim under section 1983 against Trochessett, as the "supervisor at the scene" for his failure "to stop the excessive force and unreasonable search and seizure." Docket Entry No. 1, at ¶ 38. "[S]upervisor liability requires an underlying constitutional violation before such liability can be imposed." *Tamez v. Manthey*, 589 F.3d 764, 772 (5th Cir. 2009) (citing *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997)); *see also Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) ("It is facially evident that [the supervisory liability] test cannot be met if there is no underlying constitutional violation.") (citations omitted). Because there are no underlying constitutional violations, summary judgment is appropriate on the supervisory liability claim.

### D. Intentional Infliction of Emotional Distress

Under Texas law, to prevail on an intentional infliction of emotional distress claim, a plaintiff must prove: (1) Defendants acted intentionally or recklessly; (2) Defendants' conduct was extreme and outrageous; (3) Defendants' actions caused plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). That claim fails in this case because, for the reasons previously discussed

in considering the excessive force claim, Defendants' conduct does not constitute the "extreme and outrageous" conduct that Texas law requires.

"Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (citation and internal quotation marks omitted). The court determines in the first instance whether a defendant's conduct meets this standard. *Id.* "[T]he fact that an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous." *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999). Defendants' conduct as revealed on the video and other summary judgment evidence does not rise to the level of "extreme and outrageous" conduct contemplated by Texas law. Summary judgment is thus warranted on this claim. *See id.*, 997 S.W.2d at 212, 216 (upholding trial court's grant of summary judgment because defendants' conduct was not extreme and outrageous as a matter of law).

### E.  Federal and State Law Conspiracy

Having failed to establish an underlying violation of state or federal law, Michael cannot establish conspiracy to commit a violation of any of these laws. *See Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) ("[A] conspiracy claim is

not actionable without an actual violation of section 1983.") (citation and internal quotation marks omitted); *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) ("[A] defendant's liability for conspiracy depends on participation in some underlying tort."). Because no claims remain to form the predicate of a federal or state conspiracy claim, the conspiracy claims fail as a matter of law.

## IV. CONCLUSION

Having determined that summary judgment is appropriate on all claims, the Court does not reach Defendants' affirmative defenses of official and qualified immunity. Defendants' Motion for Summary Judgment (Docket Entry No. 35) is **GRANTED**.

SIGNED this 9th day of October, 2012.

_____
Gregg Costa
United States District Judge